Filed 8/4/14  In re J.T. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

In re J.T., a Person Coming Under the
Juvenile Court Law.

RIVERSIDE COUNTY DEPARTMENT
OF PUBLIC SOCIAL SERVICES,

      Plaintiff and Respondent,

v.

M.T.,

      Defendant and Appellant.

E060307

(Super.Ct.No. RIJ110975)

OPINION

APPEAL from the Superior Court of Riverside County.  Jacqueline C. Jackson,
Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and
Appellant.

Pamela J. Walls, County Counsel, and Julie Koons Jarvi, Deputy County Counsel,
for Plaintiff and Respondent.

1

I

INTRODUCTION

Father appeals juvenile court orders denying his petition to set aside an order terminating reunification services under Welfare and Institutions Code section 388[1] (section 388 petition) and terminating his parental rights to his son, J.T. (born in 2012). This appeal follows another recent appeal brought by mother and father (parents) as to J.T.'s older sister K.T. (*In re K.T.* (Apr. 10, 2014, E059426) [nonpub. opn.]), in which this court affirmed the juvenile court's order terminating parental rights to K.T. Mother is not a party to the instant appeal.

Father contends the juvenile court abused its discretion in denying his section 388 petition, since he established his circumstances had changed and that granting his section 388 petition was in J.T.'s best interests. We conclude there was no abuse of discretion. Although father had made progress by completing various drug treatment programs, remaining sober, and completing anger management and parenting courses, father has not shown that his circumstances have permanently changed or that it is in J.T.'s best interests to set aside the order terminating reunification services. The judgment is affirmed.

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

II

FACTS AND PROCEDURAL BACKGROUND

Father has a history of involvement with the Department of Public Social Services,

Child Protective Services Division (CPS). During the summer of 2011, father's daughter,

K.T., was detained under section 300, subdivisions (b) (failure to protect) and (g) (no

provision for support), because of allegations parents had engaged in domestic violence

in front of K.T., parents were abusing drugs, and mother suffered from mental instability.

CPS initiated juvenile dependency proceedings in July 2011, as to K.T. Reunification

services provided to father, as to K.T., were terminated in April 2012. On December 3,

2012, the court terminated reunification services to mother, as to K.T.

Meanwhile, father was incarcerated in January 2012, for fraud. At the time of

father's arrest, mother was pregnant with J.T. In mid 2012, mother gave birth to J.T. J.T.

was born premature and placed in intensive care due to rapid breathing and low blood

sugar. CPS received an immediate response referral and initiated an investigation

regarding J.T.'s birth. A CPS social worker visited mother at the hospital and contacted

father, who claimed he was J.T.'s father.

*Detention Hearing*

Within two days of J.T.'s birth, CPS filed a juvenile dependency petition as to

J.T., under section 300, subdivisions (b) (failure to protect), (g) (no provision for

support), and (j) (abuse of sibling). The petition alleged parents had a history with CPS

regarding K.T., for substance abuse and domestic violence; father had failed to comply

with his case plan and reunification services were terminated as to K.T.; parents had

3

criminal histories; father was currently incarcerated and unable to provide for J.T. and his sibling, K.T. (the children); and K.T. was abused and/or neglected, and J.T. therefore was at risk of similar harm. At the detention hearing in July 2012, the juvenile court ordered J.T. detained but only as to father. Upon discharge from the hospital, J.T. was released to mother.

*Jurisdiction Hearing*

During a CPS interview in July 2012, father acknowledged he had been in and out of jail since August 2010, and was not providing support for any of his children due to his incarceration. Father had two older children from a previous relationship, who lived out of state with their mother. Upon his release from jail, father intended to continue his relationship with mother and reunify with his children. Father said he began using methamphetamine when he was 19 years old and had not previously been in treatment. He conceded he was only sober when he was incarcerated. Father met mother in 2009. During their relationship, they engaged in criminal activity, substance abuse, and domestic violence with each other. Father's criminal history includes theft, shoplifting, and burglary. Mother acknowledged during her interview that she and father abused drugs and were physically violent with each other throughout their relationship.

At the jurisdiction hearing on August 9, 2012, the juvenile court found the allegations in the juvenile dependency petition true. J.T. remained in mother's care and was provided with family maintenance services. The court ordered J.T. removed from father's care and denied father reunification services under section 361.5, subdivision (b)(10), on the ground the court had previously terminated father's reunification services

4

and parental rights to J.T.'s sibling, K.T. The court authorized father to receive visitation with J.T. for a minimum of once a month, for one hour.

Father was released from jail on August 22, 2012. As of September 2012, father was unemployed and enrolled in an inpatient substance abuse program with MFI[2] Recovery Center in Riverside. Father had a supervised visit with J.T. on September 7, 2012. Father arrived 25 minutes late. That same day, mother reportedly relapsed on methamphetamine after seeing father and returning home from taking the children to the supervised visit. On September 16, 2012, mother was hospitalized at Emergency Treatment Services for depression and paranoia. The children stayed with their maternal grandmother.

On September 17, 2012, the children were placed in protective custody with a nonrelative friend of mother's. On September 19, 2012, the CPS filed a section 387 supplemental petition to remove the children from mother's care because mother had relapsed on methamphetamine and had not been compliant with her case plan. Mother was also not properly caring for and supervising the children. When told mother had relapsed, father told the social worker he did not feel strong enough to maintain his own sobriety.

On October 10, 2012, father completed a 60-day residential inpatient drug recovery program, enrolled in an aftercare program, was attending weekly group counseling, was living in a sober living home, and became employed. The court

---

[2] My Family, Inc.

therefore increased father's visits with the children from one to two supervised monthly visits. J.T. was doing well in his placement. Father became employed in October 2012. Father regularly participated in the MFI recovery program, with one negative drug test. It was anticipated father would graduate from the program in December 2012.

At the hearing on the section 387 supplemental petition, on November 7, 2012, the juvenile court sustained the allegations in the petition, as amended, and set the matter for a contested dispositional hearing.

On November 16, 2012, the children were placed with their maternal aunt (aunt). At the contested dispositional hearing on December 10, 2012, the court ordered J.T. removed from parental custody and reunification services provided to mother. As of February 2013, parents were living together but mother claimed she was not romantically involved with father. Mother received financial assistance because of her bipolar disorder. Father was on probation until December 2015. Because of parents' work schedules, visitation was changed from one hour, twice a week, to two hours, once a week. The CPS social worker reported that parents did not appear to have a strong bond with J.T. and were more focused on K.T. Parents' visits were inconsistent. Between January 4, 2013, and May 7, 2013, father visited J.T. only three times. Maternal grandmother reported that, during one visit in April 2013, father showed up "higher than a kite," although generally his visits were "average in nature," according to the social worker.

By May 2013, father had moved back to a sober living home and was no longer living with mother. However, in June 2013, mother reported that parents were continuing

6

their romantic relationship and living together again. J.T.'s aunt reported on June 11, 2013, that she overheard mother tell maternal grandmother that parents frequently engaged in domestic violence and father was hospitalized for psychiatric care at least three times within the past six months.

On June 13, 2013, father was arrested for possession of a steak knife. J.T. was in good health, well-adjusted to his placement with his aunt, developmentally on target, happy, and closely bonded with K.T. and his aunt and uncle, who were in the process of adopting K.T. Father remained incarcerated in July, with an expected release date of August 12, 2013.

At a review hearing on July 8, 2013, the juvenile court terminated mother's reunification services as to J.T., set the matter for a section 366.26 hearing, and reduced parents' supervised visitation to once a month. As to K.T., the juvenile court terminated parental rights and ordered adoption by aunt and uncle.

*Hearing on Section 388 Petition and Section 366.26 Hearing*

In CPS's section 366.26 hearing report, filed in September 2013, the social worker reported that J.T. was adoptable because of his good health, young age, and placement with relatives. J.T.'s prospective adoptive parents, J.T.'s aunt and uncle, had cared for J.T. and K.T. since November 2012. J.T.'s aunt and uncle were in the process of adopting K.T. and also wanted to adopt J.T. J.T. viewed his aunt and uncle as parents. J.T.'s aunt and uncle were amenable to a postadoption parental contact. Parents' visitation with J.T. was sporadic. J.T. reportedly had become afraid of parents after visitation was reduced.

7

Father's whereabouts, after his release from incarceration in August 2013, were unknown until early October 2013. On October 8, 2013, father filed a section 388 petition (JV-180 form), asserting changed circumstances required modification of the jurisdictional hearing order on August 9, 2012, denying him reunification services. Father requested he be provided with six months of reunification services. Father alleged his circumstances had changed in that he had completed the MFI Recovery Center drug treatment and aftercare programs, submitted to random drug tests, and attended 12-step meetings. He had also completed parenting and anger management courses. Father asserted that granting his section 388 petition to allow six months of reunification services was in J.T.'s best interests because it provided father an opportunity to fulfill the role of being a father to J.T. and participate in additional beneficial classes and services.

In response to father's section 388 petition, CPS filed an addendum report stating that maternal relatives had reported that parents were using drugs and engaging in domestic violence. In addition, father had been hospitalized three times for mental health issues, was arrested for a parole violation, and had missed visitations. CPS concluded father had not benefited from services and J.T. should remain in his current home, where he had lived for nearly one year.

On November 5, 2013, the trial court conducted a combined hearing on father's section 388 petition and the section 366.26 proceeding. Father testified he visited J.T. in October 2013 and played with him. J.T. kissed father and appeared happy. In addition, father testified he was in compliance with his probation terms and was working sporadically in construction.

8

In response, the court noted father had recently been convicted. The court added that, although father had participated in substance abuse treatment programs, the court had no information substantiating that father was continuing to maintain sobriety. Father also appeared to have ongoing mental health issues. In addition, the CPS reports indicated father had visited J.T. only seven times during the past year. The juvenile court denied father's section 388 petition, concluding that, while there was evidence J.T.'s circumstances had begun to change, they were not changed. The court further concluded it was not in J.T.'s best interests to grant father's section 388 petition seeking six months of reunification services. After hearing additional oral argument on the section 366.26 matter, the juvenile court found J.T. adoptable and terminated parental rights as to J.T.

III

SECTION 388 PETITION

Father contends the juvenile court abused its discretion in denying his section 388 petition seeking six months of reunification services.

*A. Applicable law*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child. [Citation.] The parent bears the burden to show both '"a legitimate change of circumstances"' and that undoing the prior order would be in the best interest of the child. [Citation.] The petition is addressed to the sound discretion of the juvenile court, and its

9

decision will not be overturned on appeal in the absence of a clear abuse of discretion. [Citation.]" (*In re S.J.* (2008) 167 Cal.App.4th 953, 959-960 [Fourth Dist., Div. Two].)

In evaluating whether parents have met their burden to show changed circumstances, the trial court should consider: (1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 532.) These factors become less significant once reunification services have been terminated, as in the instant case. This is because, "[a]fter the termination of reunification services, . . . 'the focus shifts to the needs of the child for permanency and stability' [citation] . . . ." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

*B. Discussion*

Father argues that he established that his circumstances materially changed from those that existed in August 2012, when the juvenile court denied him reunification services. We disagree. The juvenile court removed J.T. from father's care and denied father reunification services under section 361.5, subdivision (b)(10), because the juvenile court had previously ordered termination of father's reunification services as to J.T.'s older sister, K.T., due to father failing to reunify with K.T. and not making a reasonable effort to treat the problems that led to her removal from father. Father's problems included domestic violence, drug abuse, and not providing support and supervision for K.T.

Although father had completed substance abuse treatment programs and parenting and anger management programs, there was evidence that father had only recently done so and the court reasonably found that father had not shown he had remained sober long enough, while not incarcerated, to establish that he would remain sober and out of jail. Most recently, father was incarcerated on two occasions, from January 2012 (before J.T.'s birth in 2012) until August 2012, and again, from June 2013 to August 2013. During the 10-month period between his incarcerations, father received substance abuse treatment. The hearing on father's section 388 petition was only three months after his release in August 2013.

CPS reported in its October 2013 response to father's section 388 petition that CPS suspected father had relapsed after his release. He reportedly was living with mother and there had been reports that they were frequently engaging in domestic violence involving the police. There were also reports from family members that father continued to abuse drugs and had been hospitalized three times for mental health problems. CPS concluded in its response to father's section 388 petition that father had not benefited from rehabilitation services. In addition, parents had not succeeded in reunifying with K.T. On July 8, 2013, four months before the section 388 hearing as to J.T., the juvenile court terminated father's parental rights to K.T. and ordered a permanent plan for K.T. of adoption by J.T.'s aunt and uncle. Under these circumstances, the juvenile court reasonably found that father had not established changed circumstances.

The evidence also showed that granting father's section 388 petition was not in J.T.'s best interests. Father's only argument was that allowing father six months of reunification services was in J.T.'s best interests because it would provide father with an opportunity to fulfill the role of being a father to J.T. and allow him to participate in additional beneficial classes and services. Father's desire to fulfill the role of a father for J.T. was too late. By the time the court heard father's section 388 petition, J.T. was one year and four months old and had never lived with father. J.T. had lived with his aunt, uncle, and sister, K.T., throughout most of his life, since he was four months old. J.T.'s aunt and uncle had provided J.T. with a stable, loving home. J.T. was closely bonded to his aunt and uncle, as well as to K.T.

On the other hand, father only visited J.T. seven times and was not closely bonded to J.T. Father also had not demonstrated he was able to support J.T. and provide him with a stable home. There was evidence father had relapsed on drugs, continued to live with mother and engage in domestic violence, had missed numerous visitations with J.T., and had been hospitalized for mental health issues three times in 2013. Furthermore, father had a criminal history, in which he had been in and out of jail, and only recently had been released from jail four months before the section 388 hearing.

We conclude there was substantial evidence establishing that father's circumstances had not sufficiently changed and that granting his section 388 petition was not in J.T.'s best interests. Therefore the juvenile court did not abuse its discretion in denying father's section 388 petition and appropriately terminated parental rights.

IV

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

MILLER

J.

13